# EXHIBIT B

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

TRUMP MEDIA & TECHNOLOGY GROUP CORP.,

     Plaintiff,

vs.

                                     Case No: 8:23-cv-01535-TPB-AAS

WP COMPANY LLC d/b/a The Washington Post,

     Defendant.

_____/

## PARTIALLY CONTESTED JOINT MOTION FOR LIMITED EXTENSION TO COMPLETE DISCOVERY

Plaintiff, Trump Media & Technology Group Corp. ("TMTG"), and Defendant, WP Company LLC d/b/a The Washington Post ("The Post") (collectively, the "Parties"), by and through their counsel, hereby jointly respectfully request that the Court allow a limited extension to complete deposition discovery beyond the February 28, 2026 deadline for all discovery set forth in the June 19, 2025 Case Management and Scheduling Order (Doc. 88, the "Case Management Order"). The Parties, however, disagree as to what extent the Court should permit discovery after the current February 28, 2026 deadline.

TMTG requests that the Court extend the discovery deadline through March 13, 2026[1] to the allow the parties to complete the depositions of the parties'

---

[1] TMTG seeks an extension through March 13, 2026 so that TMTG can take the depositions of two (2) third parties whom TMTG served with subpoenas on February 26, 2026 in accordance with Local Rule 3.04.

respective experts, The Post's deposition of TMTG's Chief Financial Officer, Mr. Phillip Juhan, and the depositions of five (5) non-party fact witnesses—three (3) non-party witnesses The Post noticed for deposition for February 27 and 28, 2026 (assuming The Post still wants to take these depositions), and two (2) non-party witnesses TMTG has advised The Post it wants to depose (those set forth in footnote 1 to the Motion)—and that The Post intends to call as witnesses at trial. Additionally, TMTG has advised The Post that its experts, Mr. Sameer Somal and Dr. Sanjai Bhagat, have both requested to have their depositions taken by Zoom because of their scheduling issues and commitments on other matters, but The Post does not wish to accommodate their request.

The Post requests the Court permit four depositions to be completed no later than March 11, 2026, due to substantial complications related to scheduling those depositions within the discovery period: (1) the deposition of Mr. Phillip Juhan, TMTG's Chief Financial Officer, and (2) the depositions of the Parties' experts. The Post understands that TMTG agrees to this requested relief, except for The Post's request to depose Mr. Somal and Dr. Bhagat in person rather than via videoconference.

## I.    **The State of Discovery and Expert Discovery**

This dispute solely concerns the schedule for deposition discovery. To date, the Parties have completed seven depositions, with three more scheduled to be completed this week. TMTG has taken five depositions of Washington Post witnesses. The Post has taken the depositions of two TMTG witnesses and has

noticed two additional TMTG witness depositions, and two non-party depositions.[2]  The parties have also noticed the depositions of their 30(b)(6) and expert witnesses.[3]

## II.   **TMTG's Requests for Out-of-Time Discovery**

### A.   **TMTG's Position**

TMTG began attempting to coordinate the depositions of The Post's witnesses and third-party witnesses with The Post on November 10, 2025. Before February 25, 2026, however, TMTG had not noticed any third-party depositions. On February 25, 2026, in conjunction with the relief TMTG seeks in this motion, TMTG noticed the depositions of two third-party witnesses for March 12 and March 13, these witnesses were personally served with subpoenas on February 26, 2026. Other than the deposition of TMTG's corporate representative, The Post did not begin attempting to coordinate the depositions of TMTG's fact witnesses until January 12, 2026. And aside from one third-party witness, The Post did not attempt to coordinate any other third-party depositions with TMTG. Instead, The Post unilaterally issued a series of third-party deposition notices at the end of the discovery period: (i) on February 8, 2026, noticing a third-party deposition for Saturday, February 28; (ii) on February 12, 2026, noticing a third-party deposition for February 27; and (iii) at 11:40pm on Saturday, February 14, 2026, noticing two

---

[2] The Post originally noticed five non-party depositions.  In the Parties' further conferrals on these issues, however, The Post explained that it had scheduled only James Row and Patrick Orlando, on February 27, and February 28, respectively.

[3] The 30(b)(6) depositions are postponed pending resolution of the protective order motions which are already before the Court.  (Doc. Nos. 140, 141).

additional third-party depositions for Saturday, February 28. On February 25, 2026, The Post confirmed that only two of the five noticed third-party depositions for February 27 and February 28 would proceed.

With regard to the parties' expert depositions, TMTG timely served its experts' report on November 14, 2025. After obtaining an agreed extension of its expert disclosure deadline at the November 19, 2025 case management conference, The Post timely served its expert's report on January 14, 2026. On January 26, 2026, TMTG requested available dates for the deposition of The Post's expert. On January 28, 2026, The Post, for the first time, requested dates from TMTG for the depositions of its experts—nearly two weeks after the rebuttal expert disclosure deadline expired.

On February 16, 2026, the parties met and conferred to discuss scheduling issues that are the subject of this motion. The Post's position was that any limited extension of the discovery cutoff should apply only to expert depositions and to the third-party depositions it had noticed for the last two days of the discovery period (February 27 and 28), and not to the two third-party depositions TMTG sought to take. The parties met and conferred again on February 19, 2026, during which The Post maintained its previously-stated position. Having reached an impasse as to the third-party depositions, the parties agreed to submit this joint motion.

Although the parties agree that a limited extension of the discovery cutoff is necessary to complete several depositions in an orderly manner, The Post opposes TMTG's request to depose two key nonparties—Will Wilkerson (The Post's primary

source for the Article[4]) and his attorney, Philip Brewster—even though The Post's own witnesses have admitted that Mr. Wilkerson and Mr. Brewster were the sole sources of the allegedly defamatory statements at issue, that The Post lacked any documentary basis for the defamatory statements, and even though The Post has indicated that it may call Mr. Wilkerson at trial. The Post's opposition is not grounded in any cognizable prejudice; rather, it reflects tactical maneuvering designed to prevent TMTG from taking depositions that go to the core of liability.

During the parties' meet-and-confer communications concerning the extension of the discovery period, The Post contended that agreeing to TMTG's request would unnecessarily "expand discovery." That opposition is particularly untenable given that TMTG acted early and proactively to schedule key depositions, including Mr. Wilkerson's. On November 10, 2025, TMTG served The Post with a list of proposed witnesses and corresponding dates for depositions. Mr. Wilkerson was included on that list. On November 16, 2025, TMTG also served proposed deposition topics.

The Post, however, opposed proceeding with the depositions of either John Haley or Mr. Wilkerson until after The Post's asserted concerns about TMTG's document production were resolved to The Post's satisfaction—a moving target that made scheduling effectively impossible. At the November 19, 2025, discovery conference, counsel for The Post stated: *"So from our perspective, there's not an*

---

[4] Defined as "Trust linked to porn-friendly bank could gain stake in Trump's Truth Social," which is identified in paragraph 13 of the Second Amended Complaint. *See id.*, ¶ 13.

*urgency to take the deposition of a critical nonparty witness before the documents have been produced."* TMTG, by contrast, explained—both in the joint report and at the hearing—that it was imperative to schedule depositions given the number of fact witnesses and experts and the finite discovery period.

This history matters. These early efforts demonstrate that TMTG did not sit on its rights or wait until the close of discovery—unlike The Post—to raise deposition scheduling issues. The Post's present opposition is not based on prejudice or burden, but on the claim that TMTG failed to timely notice these depositions—despite the fact that TMTG's earlier efforts were rebuffed, and despite the reality that The Post itself waited until the final week of discovery to notice nine depositions, many unilaterally. Under those circumstances, it is not reasonable for The Post to fault TMTG for not having noticed these two depositions earlier.

The Court also expressly reminded the parties during the discovery hearing that depositions cannot simply be unilaterally set to dates that work for one side but not the other. That admonition is directly implicated here, as The Post did not request availability for most of the witnesses it later noticed.

The Post's end-of-discovery tactics—after previously arguing that TMTG's deposition efforts were "too soon"—are precisely why the extension, if granted, should be administered evenhandedly. TMTG accommodated The Post's request to exceed the presumptive ten-deposition limit under Rule 30(a)(2) to allow the case to proceed on the merits, and has continuously worked with The Post to

address any discovery issues it has raised. TMTG now seeks reciprocity. If the Court is inclined to extend discovery to complete Mr. Juhan's deposition, expert depositions, and the third-party depositions that The Post claims it properly noticed (assuming The Post wishes to take those), there is no fair basis to structure that extension to favor only one side and to preclude TMTG from completing two targeted, critical depositions within the same limited window.

TMTG's request is narrow. The Post has acknowledged it may call Mr. Wilkerson at trial. While TMTG acknowledges that these two depositions were not noticed within the original discovery period, the relevant context is clear: (1) TMTG began attempting to schedule key depositions as early as November; (2) The Post resisted scheduling and argued depositions were premature; (3) The Post then engaged in unilateral, last-minute scheduling that made the original cutoff impracticable; (4) both parties now agree that an extension is necessary; and (5) the taking of these depositions will not affect the dispositive motion deadline or trial.

Under these circumstances, granting an extension while excluding TMTG's two depositions would reward gamesmanship and create an imbalance untethered to any legitimate prejudice—particularly where the witnesses are relevant to the merits in dispute and already within the universe of witnesses The Post itself deems trial-relevant.

As this Court has reminded litigants, "[d]iscovery in this district should be practiced with a spirit of cooperation and civility." *Frank v. Vazquez*, 2025 WL

1712872, at *2 n.2 (M.D. Fla. June 18, 2025). *See also* Middle District Discovery Handbook, § (I)(A)(1) ("Courtesy. … The district's attorneys and the Court are justifiably proud of the courteous practice that is traditional in the Middle District.").

When the parties met and conferred on February 16, 2026, TMTG expressed willingness to agree to everything that The Post requested, other than Mr. Somal and Dr. Bhagat appearing in person, provided that The Post agrees to a reciprocal extension to depose Mr. Wilkerson and Mr. Brewster. The Post refused, insisting that any extension be limited solely to its own depositions. That is not cooperation. A short, evenhanded extension—allowing both sides to complete third-party depositions in compliance with the Local Rules—is precisely what is warranted here. This case should be tried on the merits, not by ambush.

## B.    The Post's Position

The Post strongly disagrees with TMTG's mischaracterization of the record related to deposition discovery.

Unlike The Post, which seeks depositions beyond the discovery window only for witnesses that The Post had timely noticed so that the depositions could be completed before the close of discovery, TMTG asks the Court to expand the discovery schedule so that it can take depositions that it noticed for the first time on February 25, 2026 (in the midst of drafting this joint notice), to take place for

two weeks after the close of discovery.[5] Good cause is required for TMTG to receive an amendment of the Case Management Order; TMTG has shown none. The law is clear that TMTG's failure to timely act cannot constitute good cause, because it cannot show that it acted with diligence. To the contrary, TMTG has been on notice of the role Mr. Wilkerson and Mr. Brewster play in this litigation since it filed in Complaint in May 2023, and even told the Court in November that it planned to depose Wilkerson. ECF No. 119.[6] Despite this, TMTG only noticed these witnesses' depositions with three days left in the discovery period; and for dates weeks after discovery closes.

TMTG erroneously suggests that The Post somehow "rebuffed" their efforts to pursue these depositions in November by suggesting documents should be produced first. But, as described more fully below, this argument is baseless as (1) after TMTG initially raised Mr. Wilkerson's deposition in November, TMTG did not raise third-party deposition scheduling with The Post again until February 16, i.e., *three months later* and only after the deadline to timely issue subpoenas or notice their depositions; (2) TMTG never communicated any desire to depose Mr. Brewster until February 16; (3) TMTG ignores that The Post served a

---

[5] On February 25, 2026, TMTG noticed the depositions of Will Wilkerson and Philip Brewster for March 12 and March 13, 2026.

[6] On page 5 above, TMTG mischaracterizes the testimony of one of The Post's witnesses. Contrary to TMTG's characterization, the witness testified that The Post's reporting of the statements at issue was supported by on-the-record sources and documentary evidence. Because this testimony is not pertinent to the current motion and is under seal, The Post has not appended the transcript of this testimony.

document subpoena upon Mr. Wilkerson, who produced his documents *last year* (which TMTG received); and (4) nothing precluded TMTG from timely pursuing the non-party discovery it thought it needed, irrespective of The Post.  Ultimately, TMTG was responsible for timely noticing (and subpoenaing) any third-party depositions it intended to take by the discovery deadline; it simply did not do so.

Furthermore, TMTG cannot escape the consequences of its lack of diligence by framing its request as an issue of "reciprocity."  In fact, the delays have been one-sided:  TMTG's delays in providing its expert availability and producing Mr. Juhan's documents forced The Post to request the present extension as to those depositions, rather than pursue more draconian sanctions.[7]  The Court should deny TMTG's baseless request to take additional depositions out of time.

1. **TMTG has failed to show good cause exists to serve subpoenas for and then take out-of-time depositions of Mr. Wilkerson and Mr. Brewster.**

TMTG is not entitled to the extension it seeks to take Mr. Wilkerson's and Mr. Brewster's depositions because TMTG cannot establish good cause supports any such extension.  Once a scheduling order has been set, under the Federal Rule of Civil Procedure 16(b)(4), "a schedule may be modified only for good cause and with the judge's consent."  *Asokan v. Am. Gen. Life Ins. Co.*, 302 F. Supp. 3d 1303,

---

[7] TMTG's assertion that The Post waited to notice nine depositions for the final week of the discovery period is misleading. *See supra* p. 6.  In fact:  (1) in mid-January, The Post requested that TMTG present its fact witnesses for deposition before February 20, but TMTG requested to present Mr. Nunes and Mr. Glabe the following week, so it selected those dates; (2) TMTG never provided availability for its experts and in any event ultimately said they were unavailable in February; and (3) only two of the non-party depositions that The Post noticed are proceeding, and TMTG has not disputed that it is available to attend both of them.

1312 (M.D. Fla. 2017) (cleaned up). Under this standard, courts decline to modify the schedule "unless the schedule cannot be met despite the diligence of the party seeking the extension." *Nat'l Tr. Ins. Co. v. Graham Bros. Const. Co., Inc.*, 916 F. Supp. 2d 1244, 1249–50 (M.D. Fla. 2013) (citation omitted).

Here, TMTG failed to depose Mr. Wilkerson and Mr. Brewster precisely because of its lack of diligence. TMTG has long been aware of Mr. Wilkerson and Mr. Brewster as potential non-party witnesses, and expressed its intention to seek Wilkerson's deposition in November. ECF No. 119. Nevertheless, for the past several months, TMTG failed to pursue examinations of either witness despite the approaching Discovery Cut-Off.

Courts routinely reject similar efforts to take out-of-time depositions where, as here, the requesting party failed to diligently pursue those depositions before the close of discovery. *See, e.g.*, *Mennella v. Am. Airlines, Inc.*, 824 F. App'x 696, 704 (11th Cir. 2020) (per curiam) (affirming denial of motion to take out-of-time depositions where delay was due largely to the party seeking the depositions); *Stephens v. Alltran Fin., LP*, 325 F.R.D. 711, 712–13 (N.D. Ga. 2018) (denying oral motion to take out-of-time deposition where the party had not demonstrated it diligently pursued discovery); *Branovations, Inc. v. Ontel Prods., Corp.*, 2013 WL 12167927, at *1 (M.D. Fla. Sept. 5, 2013) (finding no good cause for non-party depositions after the close of discovery where defendant was previously aware of non-parties and timely served subpoenas but failed to depose them); *see also Simpson v. Ala. Dep't of Hum. Res.*, 501 F. App'x 951, 956 (11th Cir. 2012) (per

curiam) (affirming denial of motion to take out-of-time depositions filed five days before the discovery deadline where the moving party "offered no compelling reason why his motions were delayed, nor any reason explaining why the court should effectively extend its discovery deadline"). So too here; TMTG "cannot establish the diligence necessary to show good cause [because] it had full knowledge of the information [needed to depose Mr. Wilkerson and Mr. Brewster] before the scheduling deadline passed" and did nothing to try to take those depositions before the Discovery Cut-Off. *Williams v. Blue Cross & Blue Shield of Fla.*, 2010 WL 3419720, at *1 (N.D. Fla. Aug. 26, 2010).

Under the local rules, TMTG has missed any opportunity to timely seek subpoenas to depose Mr. Wilkerson and Mr. Brewster before the close of fact discovery because, under Local Rule 3.04, "[a] deposition by oral examination or written questions and a subpoena duces tecum require fourteen days' written notice to the deponent or responding person." *See also Music Royalty Consulting, Inc. v. McLean*, 2025 WL 1247566, at *1–2 (M.D. Fla. Apr. 30, 2025) (quashing subpoena that was issued nine days before the stated date of compliance and was filed after the close of discovery). On February 25, three days before the close of discovery, TMTG served untimely notices that it intends to depose the witnesses on March 12 and March 13, nearly two weeks after the Court-ordered close of discovery. There is simply no basis for TMTG to suggest that it should burden non-parties with out-of-time depositions that were the product of its own delay.

To The Post's knowledge, TMTG has not successfully served subpoenas on

either Mr. Wilkerson or Mr. Brewster. Even if were able to serve the subpoenas, the witnesses would be entitled to contest its efforts in their respective jurisdictions against TMTG's imposition of undue burden, causing further delay.[8] *See* Fed. R. Civ. P. 45(d).

TMTG argues that The Post's comments at the November 19, 2025 discovery hearing somehow support its request for extra time. For multiple reasons, they do not. First, TMTG misstates colloquy from the hearing. The depositions of Mr. Brewster and Mr. Wilkerson were not discussed at the November 19 hearing, which concerned an entirely different witness.[9]

Second, any suggestion that The Post "rebuffed" TMTG's efforts to notice and subpoena third parties is unfounded. *See supra* p. 6. TMTG seems to imply that The Post's mid-November concerns about TMTG's document production meant The Post would resist scheduling any depositions for months after. This post-hoc attempt to shift blame for its own tardiness to The Post is belied by the facts following the November discovery conference: following the hearing, TMTG

---

[8] Depending on the date on which TMTG successfully serves the subpoenas, even if the Court allows these depositions to take place as late as March 13, the witness may successfully argue that it was not provided sufficient notice. *See* Local Rule 3.04.

[9] The Post did express concern with the taking of Mr. Haley's deposition at that time, as his documents were within TMTG's possession, custody, or control and TMTG had not been responsive to The Post's efforts to have TMTG collect and search his documents. Nov. 19, 2025 Hr'g Tr. at 47:21-53:20.

did not approach The Post about scheduling or subpoenaing third-party depositions until February 16.[10]

To the extent TMTG implies The Post was resistant to scheduling depositions any later than November 19, that implication is not grounded in any conversations the Parties had. Indeed, The Post itself inquired about deposition scheduling in mid-January. Still, TMTG said nothing about these depositions. And even if TMTG had sought again to schedule Mr. Wilkerson's deposition (or for the first time to schedule Mr. Brewster's deposition), The Post had no power to "rebuff" its efforts.

Third, TMTG ignores that The Post had already subpoenaed Mr. Wilkerson, for documents, in September 2025. Thus, by November, The Post (and TMTG) had already received his documents. TMTG could have could have subpoenaed him at any time; TMTG chose not to do so.

Again, TMTG's efforts to lay blame at The Post's feet crumble when subjected to scrutiny. TMTG claims it was The Post's "unilateral, last-minute scheduling that made the original cutoff impracticable." *Supra* p. 7. Not so. But for TMTG's delays related to Mr. Juhan and its experts' schedule, the original cutoff would have been entirely practicable—as evidenced by the fact that The Post will complete all other depositions by February 28. *See supra* n.2. If TMTG had exercised similar diligence it would likely have been able to do the same.

---

[10] By this date, TMTG, or The Post for that matter, could not have timely noticed additional depositions before the close of discovery under this Court's rules. *See supra* p. 12.

Finally, TMTG's requested relief would unfairly prejudice The Post. Although the good-cause standard looks to the moving party's diligence, courts often reject belated attempts to expand discovery aware of the prejudice the opposing parties would suffer if they granted the requested relief. *See, e.g.*, *Branovations, Inc.*, 2013 WL 13167972, at *1 (declining to reopen discovery and noting the prejudice that granting the requested relief would entail). The Parties' summary judgment briefs and Daubert motions are due on March 27. Because of TMTG's delay related to Mr. Juhan and its experts, The Post will be forced to depose Mr. Juhan and its experts in March and draft its *Daubert* motion in half the time it should have been allotted. TMTG's depositions of Mr. Wilkerson and Mr. Brewster will cover topics relevant to actual malice, which will be a subject of The Post's summary judgment motion. Should the Court permit TMTG to take their depositions on March 12 and 13, The Post will also have two weeks less time to complete its summary judgment motion after the last fact deposition than it otherwise would have—again, all because of TMTG's delay.

Because there is not good cause to grant TMTG's extension, The Court should deny TMTG's request.

## 2. TMTG does not provide good cause to have Mr. Somal and Dr. Bhagat appear via Zoom for their depositions.

TMTG provides no explanation for its request that its expert witnesses be permitted to sit for deposition via Zoom besides stating that its experts have "requested to have their depositions taken by Zoom because of their scheduling issues and commitments on other matters." *Supra* p. 2. That is not enough to

establish the good cause required for remote depositions.  And TMTG's statements regarding Mr. Somal's and Dr. Bhagat's prior commitments that prevent them from traveling fare no better.  *See infra* p. 30.  TMTG fails to carry its burden to deprive The Post of its authority under the Federal Rules of Civil Procedure to examine TMTG's experts in person.

Under Federal Rule of Civil Procedure 30(b)(4), absent agreement among the parties, remote depositions are available only by court order.  That is because "[t]he Federal Rules of Civil Procedure empower . . . the party taking the deposition[] to determine the medium and location of the deposition."  *Dollard v. City of Safety Harbor*, 2022 WL 1212791, at *1 (M.D. Fla. Apr. 25, 2022).  To obtain a remote deposition, the "movant must show necessity through legitimate reasons, weighed against particularized showings of prejudice by the opposing party."  *Tsien v. Bd. of Regents of Univ. Sys. of Ga.*, 2021 WL 6617307, at *1 (S.D. Ga. Nov. 12, 2021) (declining to order remote deposition).

To the extent TMTG argues The Post needs to establish remote depositions of Mr. Somal and Dr. Bhagat constitute "undue burden[s]," it misconstrues the law.  *See infra* p. 31.  The movant must "establish[] good cause for the court to circumvent [the examining party's] selected medium."  *Dollard*, 2022 WL 1212791, at *1 (declining to order remote deposition).  Only if the movant clears this hurdle, does the examining party need to explain the prejudice it would suffer.  *U.S. Equal Emp. Opportunity Comm'n v. Qualtool, Inc.*, 2022 WL 20564197, at *2 (M.D. Fla. Aug. 25, 2022) (declining to order remote deposition).

TMTG's allusions to Mr. Somal's and Dr. Bhagat's prior commitments and their out-of-state residence fall short. *See In re Deepwater Belo Horizon Belo Cases*, 2021 WL 6882434, at \*3–4 (N.D. Fla. July 12, 2021) (determining concerns about the time and cost of travel for an in-person deposition were insufficient); *Tsien*, 2021 WL 6617307, at \*2 ("Travel and quarantine expenses do not constitute legitimate reasons or good cause to avoid an in-person deposition." (citation omitted)). TMTG cannot carry its burden with vague protestations of inconvenience. *See In re Deepwater Horizon*, 2021 WL 6882434, at \*3 (rejecting request for remote deposition and observing "[t]here must be grounds for doing so presented by the party making the request because an in-person deposition is generally superior" (cleaned up)). As The Post explains at length in its proposal, courts routinely order witnesses to sit for in-person depositions absent good cause. *See infra* p. 24. TMTG offers nothing that would constitute good cause.

And remote depositions, despite TMTG's suggestions to the contrary, would prejudice The Post. "Remote depositions preclude in-person confrontation and the assessment of a deponent's demeanor, affect, non-verbal responses, and facial expressions." *Charr v. King*, 2023 WL 9792732, at \*2 (S.D. Fla. Nov. 3, 2023); *see also Krishmar-Junker v. Kingline Equip., Inc.*, 2025 WL 1710041, at \*5 (S.D. Ala. June 18, 2025). They also prevent the parties from observing the witness's conduct during the examination. *Tsien*, 2021 WL 6617307, at \*3 ("The opportunity for mischief arises when a deponent logs into a remote deposition without counsel or a court reporter physically present in the same room."). Of course, in-person

depositions present a variety of other "tangible and intangible benefits." *Crutchfield v. Experian Info. Sols., Inc.*, 2025 WL 2938760, at *2–3 (N.D. Ill. Oct. 16, 2025) (identifying various benefits). Giving up these benefits imposes real costs. That is why courts frequently require important witnesses to sit for in-person depositions absent a clear showing of good cause for a remote deposition. *See, e.g., Charr*, 2023 WL 9792732, at *2 (denying protective order for remote deposition where the witness's "deposition testimony is presumably critical"); *Angall-Leonce*, 2020 WL 13015921, at *1–2 (ordering in-person deposition over general concerns about travel and noting that when depositions are on "paramount issues," "the prejudice Defendants would face if deprived of in-person depositions is not insignificant"); *see also Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 1950728, at *2 (S.D.N.Y. July 16, 2025) ("District courts have continued to recognize that there is nothing extraordinary or inappropriate about seeking to take a deposition in person, particularly for a key witness." (cleaned up)).

The Post need not sacrifice its defense to save Mr. Somal and Dr. Bhagat from the inconvenience of in-person examinations—they are being compensated for their time after all. TMTG relies upon their opinions to support a damages claim of *billions of dollars*. Given the amount at stake, The Post should have the full opportunity to probe Mr. Somal's and Dr. Bhagat's opinions and Mr. Somal and Dr. Bhagat as witnesses. Further, remote depositions will hinder the examinations. Mr. Somal and Dr. Bhagat reviewed a significant volume of materials from TMTG when forming their opinions, including long presentations

and large workbooks of spreadsheets. Questioning Mr. Somal and Dr. Bhagat about documents like these would be impractical in a videoconference. Similarly, Mr. Somal and Dr. Bhagat damages assessment rests on purportedly complex financial calculations. A remote deposition would hinder The Post's efforts to conduct an efficient and thorough examination of exactly how Mr. Somal and Dr. Bhagat performed their calculations.[11]

If TMTG cannot be troubled to present the experts it has retained for in person depositions, it should not be able to rely on them to support its staggering damages claim to the jury.

### III.  The Post's Requests for Out-of-Time Discovery

#### A.  The Post's Position

The Post respectfully requests that the Court (1) permit the out-of-time deposition of Mr. Philip Juhan; (2) permit the out-of-time in-person depositions of Mr. Sameer Somal and Dr. Sanjai Bhagat or, in the alternative, strike Mr. Sameer Somal and Dr. Sanjai Bhagat's expert testimony; and (3) permit the out-of-time deposition of Dr. Johnson.  Because The Post is seeking to extend the discover cut-off set forth in the Case Management Order before the close of discovery—February 28, 2026, the Court may grant The Post the extension it seeks upon a showing of

---

[11] That TMTG has offered only truncated remote depositions compounds the prejudice to The Post.  TMTG has represented that Dr. Bhagat is available for windows of only four or six hours depending on the date of the deposition.  But depriving The Post of the full seven hours of on-the-record examination the Federal Rules of Civil Procedure provide harms The Post's ability to present a fulsome defense.  *See* Fed. R. Civ. P. 30(d)(1).  At the very least, The Post is entitled to full seven-hour remote depositions.

good cause. *See* Fed. R. Civ. P. 16(b)(4); Fed. R. Civ. P. 6(b)(1)(A).

Here, good cause exists to permit these limited depositions. Specifically, as set forth below, TMTG disclosed that it has failed to review or produce Mr. Juhan's documents before his February 19, 2026 deposition—despite a Court order that they be produced months ago—supports good cause for the postponement of his deposition. And TMTG's assertion that it could not present its experts for deposition in the discovery period similarly supports a slight extension for the expert depositions. No further extension is required.

### 1. Good Cause Exists for an Out-of-Time Deposition of Mr. Juhan.

The Post has proceeded diligently and in good faith to try to complete Mr. Juhan's deposition before the discovery cut-off of February 28, 2026 set forth in the Case Management Order (the "Discovery Cut-Off"). *See* ECF No. 88. However, TMTG's recent disclosure that it had failed to search or produce documents from his custodial file warranted a postponement.

On January 12, 2026, The Post timely inquired about Mr. Juhan's availability. On January 28, 2026, TMTG proposed February 19, 2026, which The Post noticed shortly thereafter.

However, on February 13, TMTG revealed that it had failed to search and review Mr. Juhan's custodial files for documents responsive to The Post's discovery requests.

The Post had repeatedly expressed to the Court and to TMTG its concern that Mr. Juhan's documents had not been searched, as it had received zero

documents uniquely from Mr. Juhan's custodial file.  Nov. 19, 2025 Hr'g Tr. at 14:1-16:16.  To address this concern, the Court ordered TMTG to complete its production of documents (from all custodians, including Mr. Juhan) by November 26, 2025; provide an accurate list of repositories searched; and provide a hit report showing the number of documents from each custodian's repository responsive to TMTG's search strings.  Nov. 19, 2025 Order, ECF No. 128.  TMTG purportedly complied with that order, producing documents and listing Mr. Juhan as having his repositories searched.  However, following further outreach by The Post about deficiencies in this production and discovery responses, including that it had not received any documents with metadata showing they were from Mr. Juhan's files, counsel for TMTG on February 13, 2026 for the first time acknowledged that it had not searched for and produced Mr. Juhan's custodial documents.[12]

In order to mitigate prejudice to The Post, The Post requested, and TMTG agreed, to postpone Mr. Juhan's deposition, so TMTG could complete its production of Mr. Juhan's custodial files.  TMTG has made rolling productions, including a production as recently as Tuesday, and privilege logs as recently as today—a week after Mr. Juhan was supposed to be deposed.

TMTG's failure to timely produce records from Mr. Juhan's custodial file is the only reason that The Post seeks leave to take Mr. Juhan's deposition out of time.  Had TMTG promptly complied with the Court's previous orders and

---

[12] For example, Post counsel contacted counsel for TMTG about Mr. Juhan's custodian file on November 15, 2025, December 11, 2025, February 4, 2026, and February 9, 2026.

produced Mr. Juhan's custodial files, The Post would have been able to complete this deposition as noticed on February 19, 2026. These facts alone establish good cause for The Post's requested extension. *See Dag Enters. v. Exxon Mobil Corp.*, 2004 WL 3312154, at *3, *5 (D.D.C. Jan. 28, 2004) (permitting out-of-time depositions of witnesses where party was unable to take depositions before close of discovery due, in part, to opponent's failure to comply with discovery requests).[13]

The requested extension will not prejudice TMTG. Indeed, The Post understands that TMTG does not oppose The Post's request to take Mr. Juhan's deposition out of time, and TMTG has confirmed in the parties' correspondence that it will make Mr. Juhan available in early March.[14]

### 2. Good Cause Exists for Out-of-Time Depositions of Mr. Somal and Dr. Bhagat.

Just as with Mr. Juhan's deposition, The Post has proceeded diligently and

---

[13] The extension The Post requests also avoids burdening the Parties with the added costs of deposing Mr. Juhan over multiple days. Where, as here, a party produces many records from the witness's custodial files on the eve of the deposition, and the deposition goes ahead as planned, courts permit the examining party to re-depose the witness. *Eagle View Techs., Inc. v. Nearmap US, Inc.*, 2023 WL 3285511, at *3–4 (D. Utah May 5, 2023) (compelling witness to sit for an additional deposition where the examining party "had no meaningful opportunity to review the documents" produced from the witness's custodial file due to the timing of the production). "The timing of [TMTG's] production" would have "deprived [The Post] of the opportunity to examine" Mr. Juhan about the newly produced documents, "a continued deposition [would have been] necessary to fairly examine" him. *Id.* at *3 (citation omitted). Permitting The Post to take Mr. Juhan's deposition out of time after TMTG has completed its productions achieves the same end without the added costs and additional briefing that would have been required if The Post pressed forward with Mr. Juhan's deposition without the benefit of his custodial files.

[14] The Court has already granted The Post leave to file a motion for sanctions in connection with TMTG's failure to follow the Court's prior discovery orders. *See* ECF No.128. After the production of Mr. Juhan's documents is complete, The Post expects to address TMTG's failure to make a timely production in its forthcoming motion.

in good faith to try to depose TMTG's experts Mr. Somal and Dr. Bhagat before the Discovery Cut-Off on February 28, 2026.  The only reason for the postponement arises from TMTG's representation that its experts were unavailable to be deposed prior to the close of discovery.

The Post exhausted more than reasonable diligence to attempt to depose TMTG's experts during the discovery period.  On January 28, 2026, one month before the Discovery Cut-Off, The Post requested Mr. Somal's and Dr. Bhagat's availability to be deposed.  More than ten days later, on February 8, 2026, The Post noticed Mr. Somal and Dr. Bhagat's depositions for February 23 and 24, 2026, explaining that it was doing so to protect its rights, because TMTG had not proposed any dates.  On February 13, 2026, TMTG asserted that it was still investigating its experts' availability.  On February 16, 2026, TMTG asserted for the first time that they were not available on February 23 and 24, and The Post requested their availability on or before February 28, 2026.  On February 19, TMTG's counsel asserted for the first time that its experts would not be available within the discovery period.

The Post need not recite more to establish good cause for leave to take Mr. Somal's and Dr. Bhagat's depositions out of time.  "[A] party cannot disclose its experts and then claim that they are unavailable to be deposed until after the discovery deadline.  If parties had that privilege, there would be no use for a Scheduling Order because parties could simply disregard it at their convenience." *Solomon v. AIG Prop. Cas. Co.*, 2025 WL 2829742, at *2 (M.D. Fla. Oct. 6, 2025)

(alteration in original) (citation omitted); *see also, e.g.*, *Eldridge v. Pet Supermarket, Inc.*, 2019 WL 3406926, at *3 (S.D. Fla. July 25, 2019) (ordering out-of-time deposition of expert where expert was not made available for a deposition before the close of discovery).

There is no prejudice to TMTG from this request. The Post understands that TMTG does not intend to oppose this request, and has offered to make its experts available in early March.

Finally, TMTG has offered to make Mr. Somal and Dr. Bhagat available only for videoconference depositions. The Federal Rules of Civil Procedure, however, do not empower TMTG to decide where and how The Post will conduct its depositions. Rather, absent a protective order, "[a] party has a general right to compel any person to appear at a deposition." *Huddleston v. Bowling Green Inn of Pensacola*, 333 F.R.D. 581, 587 (N.D. Fla. 2019) (citation omitted). And "in-person depositions are the default." *Hardy v. Ace Ins. Co.*, 2024 WL 3952319, at *1 (M.D. Fla. Aug. 27, 2024) (granting motion to compel in-person depositions); *see also ATLC, Inc. v. Broadband iTV, Inc.*, 2024 WL 4554656, at *1 (M.D. Fla. Sept. 20, 2024) (declining to order remote deposition). Thus, where, as here, the opposing party fails to provide compelling reasons for remote depositions, courts will require the witnesses be made available for in-person examinations. *See, e.g.*, *Angall-Leonce v. On Point Trans., Inc.*, 2020 WL 13015921 (N.D. Fla. Dec. 10, 2020) (granting motion to compel in-person depositions); *Alonso-Llamazares v. JPMorgan Chase Bank, N.A.*, 2023 WL 397811, at *1 (S.D. Fla. Jan. 13, 2023)

(declining to order a remote deposition).

In its discussions with The Post, TMTG has failed to articulate any reason why Mr. Somal and Dr. Bhagat—whose opinions TMTG proposes to rely upon in support of its claim of billions of dollars in damages, *see* Second Am. Compl., ECF No. 70—should not be made available for in-person examinations, let alone the good cause required to prevent in-person depositions. *See, e.g.*, *Arval Serv. Lease S.A. v. Clifton*, 2015 WL 12818837, at *3 (M.D. Fla. June 23, 2015) (requiring in-person deposition of corporate representatives where plaintiffs failed to show good cause for videoconference depositions). Only now TMTG alludes to "other commitments across the country that preclude [Mr. Somal and Dr. Bhagat] from traveling to either Washington D.C. or Florida to appear for an in-person deposition." *Infra* p. 30. Even the authority TMTG identifies makes clear the witnesses' preferences, no matter how strong, do not entitle them to remote depositions especially where, as here, their testimony addresses central issues in the case. *See Qualtool, Inc.*, 2022 WL 20564197, at *2 (declining to order remote deposition of key witness and observing "the Defendant's request to appear in person while the witness testifies is certainly reasonable"). Although The Post noticed both depositions for its counsel's offices in Washington, D.C., where other depositions were proceeding concurrently, The Post remains willing to consider other reasonable locations, including Tampa, Pennsylvania, or Colorado. With this solution on the table, Mr. Somal and Dr. Bhagat lack any reasonable justification to resist in-person depositions. *See, e.g.*, *Itri v. Jones Foster P.A.*, 2024 WL

3650386, at *2 (S.D. Fla. June 26, 2024) (ordering witness to appear for in-person deposition in Florida or his state of residence Massachusetts where he cited inability to travel as a reason for a remote deposition).

Alternatively, if the Court declines to extend the schedule for this limited purpose, TMTG's experts should be excluded. "[A] failure to provide deposition dates before the end of the discovery period can be grounds to exclude an expert at trial." *Solomon*, 2025 WL 2829742, at *2 (citation omitted). And courts in this Circuit have repeatedly stricken expert reports where, as here, the disclosing party has failed to make that expert available for a deposition before the close of discovery. *See, e.g. id.* at *4 (striking expert's testimony where the disclosing party offered him as available for a deposition only after the close of discovery); *Rice v. Self*, 2023 WL 6518863, at *7–8 (N.D. Ga. Feb. 22, 2023) (similar); *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 2019 WL 2008665, at *1-2 (S.D. Fla. Mar. 11, 2019) (similar), *aff'd*, 5 F.4th 1235, 1243–44 (11th Cir. 2021) (affirming the court's decision to strike expert report).

### 3. Good Cause Exists for an Out-of-Time Deposition of Dr. Johnson.

Unlike TMTG, The Post has made its expert, Dr. Johnson, available to sit for a deposition before the Discovery Cut-Off.[15] Nevertheless, good cause exists to

---

[15] TMTG's representation that The Post 'withdrew' Dr. Johnson's availability within the discovery period is wrong. *See infra* pp. 28–29. Once TMTG made clear that its experts would not be available until March, The Post provided a comparable date for Dr. Johnson's availability (which was also necessary to mitigate prejudice from the delayed deposition of Mr. Juhan). Two days before the deposition, the Parties agreed that, while this dispute was pending, the expert depositions would be postponed to March. *See* Feb. 24, 2026 J. Garcia Email. The Post never represented that Dr. Johnson would not be available for a deposition on February 26. Had TMTG

permit TMTG to take Dr. Johnson's deposition out of time because his testimony would benefit from having the opportunity to consider testimony from TMTG's CFO Mr. Juhan, and TMTG's experts, who were all timely noticed to be deposed first.

The requested extension will not prejudice TMTG. Indeed, The Post understands that TMTG does not oppose The Post's request to permit Dr. Johnson (like TMTG's experts) to be deposed out of time.

### B. TMTG's Position

As previously set forth, TMTG does not oppose The Post's request to take Mr. Juhan's deposition outside the discovery cutoff and has agreed to make Mr. Juhan available on March 3, 2026 (the date currently scheduled by the parties). TMTG has agreed to this accommodation in an effort to avoid unnecessary motion practice and to permit The Post to depose Mr. Juhan after receiving TMTG's supplemental production.

That said, TMTG respectfully disputes The Post's characterization of TMTG's discovery conduct. TMTG has complied in good faith with its discovery obligations and has produced millions of pages of responsive records, including documents concerning and involving Mr. Juhan. TMTG did not intentionally withhold Mr. Juhan's materials or fail to search his files in disregard of any court order. Nor can The Post contend that no documents were produced for Mr. Juhan

---

decided to proceed with Dr. Johnson's deposition on that date—even though it failed to notice his deposition—The Post would have presented him or sought appropriate Court intervention.

given the hit reports TMTG provided to The Post reflecting thousands of documents involving Mr. Juhan. Rather, The Post's concern is that there were no documents "uniquely coded from Phillip Juhan's files." After further investigation, TMTG recently learned from its vendor, for the first time, that due to the manner in which Mr. Juhan's files were ingested by the vendor, Mr. Juhan's custodial files were inadvertently not included in the custodial search workflow as intended.

Upon learning of this issue, TMTG promptly disclosed it to The Post and has undertaken remedial efforts with its vendor to search for and produce responsive documents from Mr. Juhan's custodial files using the agreed-upon search terms in short order. TMTG also agreed to postpone Mr. Juhan's deposition so that The Post could receive and review those supplemental materials beforehand. These actions reflect TMTG's good-faith efforts to address an inadvertent vendor issue, not dilatory conduct.

Accordingly, while TMTG consents to Mr. Juhan's deposition on March 3, 2026, TMTG does not agree with The Post's suggestion that an out-of-time deposition is warranted because of bad faith, intentional noncompliance, or disregard of the Court's orders.

Similarly, TMTG is an agreement with The Post's request for the parties to take the depositions of their respective experts outside the discovery cutoff. TMTG, in good faith, promptly coordinated with its experts regarding their availability when The Post first requested dates from TMTG at the end of January (despite TMTG having served its expert report on November 14, 2025), and informed The

Post of its experts' unavailability as soon as it was able to and offered the earliest dates its experts were available in March. Notably, The Post initially offered February 26 or 27 for its expert's deposition, but then, after TMTG notified The Post that its experts were not available during that same week (during which seven depositions had already been scheduled), The Post offered March 11 for its expert's deposition (which was clearly after the close of discovery). As a result, The Post's request to strike Mr. Somal and Dr. Bhagat because their offered deposition dates fall outside the discovery period is belied by The Posts' own conduct.

Moreover, the cases relied on by The Post in support of their request to strike Mr. Somal and Dr. Bhagat are inapposite. In *Solomon*, the moving party requested deposition dates before the expert disclosure deadline. *See Solomon*, 2025 WL 2829742, at *2. Here, The Post waited until nearly three months after the report was served and two weeks after its rebuttal expert deadline expired to request the depositions of Mr. Somal and Dr. Bhagat. In addition, the non-moving party in *Solomon* offered one of their experts after the dispositive motion deadline, which the Court found to be patently unreasonable. *See id*. But here, Plaintiff has made Mr. Somal and Dr. Bhagat available well in advance of the March 27, 2026 dispositive motion deadline.

*Rice* is distinguishable because the non-moving party's expert was stricken because no reason was given for the expert's unavailability. *See Rice,* 2023 WL 6518863 at *7. Here, Mr. Somal and Dr. Bhagat have prior commitments during the last week of the discovery period, and the parties had already agreed to

29

schedule several other party and non-party witnesses during the week that Mr. Somal and Dr. Bhagat were unilaterally noticed.

*St. Louis* is distinguishable because the moving party was affirmatively seeking to strike the non-moving party's experts and did not agree to a mutual extension of the discovery cutoff. *See St. Louis*, 2019 WL 2008665, at *1-2. But here, the parties have agreed to extend the discovery cutoff so that all experts— including The Post's rebuttal expert—can be deposed after the discovery cutoff. Given that neither side has made its experts available for deposition during the discovery period, it would be inequitable for only one party's experts to be stricken.

Further, in an effort to expedite the depositions of TMTG's experts given their time constraints, TMTG proposed videoconference depositions as a reasonable accommodation. "The party seeking remote deposition must provide a 'legitimate reason' for doing so. A sister court has held that once a legitimate reason is given, the opposing party must show how a remote deposition would prejudice them." *United States Equal Employment Opportunity Comm'n v. Qualtool, Inc.*, 2022 WL 20564197, at *2 (M.D. Fla. Aug. 25, 2022) (citing *In re Deepwater Horizon Belo*, 2021 WL 6882434, at *3, n.4 (N.D. Fla. July 12, 2021)).

Here, Mr. Somal and Dr. Bhagat have other commitments across the country that preclude them from traveling to either Washington D.C. or Florida to appear for an in-person deposition. Those commitments include, but are not limited to, handling matters in other cases for which they were retained before becoming involved in this action. Thus, forcing Mr. Somal and Dr. Bhagat to appear in

person, when they have already agreed to appear via Zoom, would be particularly burdensome. This is especially true when both witnesses are outside the Court's jurisdiction—Mr. Somal is based in Pennsylvania, and Dr. Bhagat resides in Colorado. *See Onemata Corp. v. Rahman*, 2021 WL 5175310, at *2 (S.D. Fla. Nov. 5, 2021) (denying motion for protective order on other grounds: "While deposing individuals or entities outside of a court's jurisdiction undoubtably has the potential to be burdensome, utilizing a remote platform further mitigates any potential harm to Plaintiff in producing the Non-Parties for deposition."). To date, The Post has not articulated any legitimate prejudice why Mr. Somal and Dr. Bhagat must appear in person. *See Qualtool, Inc.*, 2022 WL 20564197 at *2 ("once a legitimate reason is given, the opposing party must show how a remote deposition would prejudice them.").

When the circumstances warrant that an in-person deposition is unworkable, The Post must show that conducting the deposition remotely constitutes an undue burden. *See Delgado v. Magical Cruise Co., Ltd.,* 2017 WL 2346215, at *2 (M.D. Fla. May 30, 2017) (collecting cases explaining that remote depositions are an adequate substitute for in-person depositions: "While the Court acknowledges that deposing Delgado from Peru via Skype is not as desirable as a face to face deposition in Florida, to the extent this is a burden on [The Post], such burden is not 'undue' under the circumstances."). The Post has failed to demonstrate any undue burden. Overall, "Federal Rule of Civil Procedure 30(b)(4) provides courts with 'broad discretion to control and to place appropriate limits on

31

discovery, which includes authorizing depositions to be taken by remote means.'" *Caballero v. Fuerzas Armadas Revolucionarias De Colombia*, 2023 WL 12082419, at *3 (S.D. Fla. Apr. 22, 2023) (quoting *Graham v. Ocwen Loan Servicing,* LLC, 2016 WL 7443288, at *1 (S.D. Fla. July 1, 2016)). Because there is no legitimate prejudice articulated by The Post, the Court should allow Mr. Somal and Dr. Bhagat to appear remotely for their depositions.

Dated: February 26, 2026          Respectfully submitted,

**BRITO, PLLC**
*Counsel for Plaintiff*
2121 Ponce De Leon Boulevard
Suite 650
Miami, FL 33134
Office: 305-614-4071
Fax: 305-440-4385

By: */s/ Alejandro Brito*
    **ALEJANDRO BRITO**
    Florida Bar No. 09842
    Primary: abrito@britopllc.com
    Secondary: apiriou@britopllc.com
    **JALAINE GARCIA**
    Florida Bar No. 58632
    Primary: jgarcia@britopllc.com
    **IAN MICHAEL CORP**
    Florida Bar No. 1010943
    Primary: icorp@britopllc.com

THOMAS & LoCICERO PL

*/s/ Carol J. LoCicero*
Carol Jean LoCicero (FBN 603030)
Linda R. Norbut (FBN 1011401)
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
clocicero@tlolawfirm.com
lnorbut@tlolawfirm.com
*Counsel for Defendant*

WILLIAMS & CONNOLLY LLP

*/s/ Thomas G. Hentoff*
Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)
Isabelle J. Beaton (*pro hac vice*)
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
thentoff@wc.com
ngamse@wc.com
*Counsel for Defendant*